# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:13-cv-101-MR-DSC

| | |
|---|---|
| MICHAEL D. HENSLEY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED PARCEL SERVICE, INC., )<br>)<br>Defendant. )<br>) | MEMORANDUM<br>DECISION AND ORDER |

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment. [Doc. 12]. For the reasons stated herein, the Court will stay this matter pending the resolution of Plaintiff's underlying administrative appeal.

## BRIEF FACTUAL AND PROCEDURAL HISTORY

In September, 2007, Plaintiff Michael D. Hensley ("Hensley") became a full-time package delivery driver for Defendant United Parcel Service, Inc., ("UPS"). [Doc. 13-1 at 8 (26)]. UPS requires all of its package delivery drivers to obtain a Federal Motor Carrier Safety Regulation Medical Examiner's Certificate (commonly known as a "DOT card"), before

operating its vehicles. Until 2012, Hensley had passed his prior medical exams in order to obtain his DOT cards.

In June of 2012, Hensley discussed with his family doctor "having problems being sleepy." [Doc. 13-1 at 13 (48)]. On June 13, 2012, Hensley was seen by his family doctor who referred him to a local sleep study clinic. [Id. at 15 (55)]. On this same date, June 13, 2012, Hensley went to the local UPS-required medical clinic, Sisters of Mercy Urgent Care center, and obtained his DOT card from a physician there, Dr. Gilpin. [Doc. 15-17 at 1 to 7]. Dr. Gilpin qualified Hensley for an unrestricted two-year DOT card. [Id. at 7].

Between June 13, 2012, and July 31, 2012, Hensley visited the sleep study clinic for a Polysomnogram evaluation and a Multiple Sleep Latency Test. [Doc. 13-1 at 17 (65); (68)]. On July 31, 2012, Hensley was informed by Dr. Buechler, the sleep study clinic director, that he was diagnosed with narcolepsy with cataplexy. [Id. at 19 (71)]. Hensley was put on a regimen of prescription medications to prevent excessive daytime somnolence. [Id. at 22 (85)]. Hensley informed UPS of his diagnosis.

On August 1, 2012, Hensley, accompanied by a UPS health and safety supervisor, drove to the Sisters of Mercy clinic so that Hensley could

2

be examined again. [Id. at 23 (87)]. Hensley provided his narcolepsy information to the receptionist and, after about 30-45 minutes, a nurse called Hensley's name. Hensley spoke to the nurse who provided him with a new DOT card signed by a different doctor, Dr. Somani. [Doc. 15-18]. Dr. Somani had contacted Dr. Buechler at the sleep study clinic about Hensley's narcolepsy diagnosis. Dr. Buechler responded, in part, by providing Dr. Somani a letter dated August 1, 2012 [Doc. 15-1 at 1-2], explaining Hensley had no job restrictions. [Doc. 13-1 at 24 (92)]. Without physically examining Hensley, Dr. Somani reissued him a DOT card but reduced Dr. Gilpin's two-year validation to one year. [Doc. 15-18].

Following his visit to Sisters of Mercy on August 1, 2012, Hensley returned to work with his reissued DOT card and presented it to the manager of the Asheville UPS Center. [Doc. 13-1 at 24 (93)]. The manager told Hensley he would not be permitted to drive until he could "figure everything out." [Doc. 13-1 at 25 (94)]. On August 28, 2012, after Hensley had finished his early morning shift as a presorter (a non-driving assignment at UPS), the manager approached him and gave him a "sticky" note that instructed him to return to Sisters of Mercy for another DOT exam. This exam was scheduled by UPS for Hensley. Hensley was

3

directed to appear at the Sisters of Mercy clinic at 11:00 a.m. that same day (August 28, 2012) specifically to see a third doctor named Dr. Lawson. Hensley appeared at the clinic as instructed and surreptitiously recorded the verbal discussions that occurred during his examination performed by Dr. Lawson. [Doc. 13-1 at 29 (111)]. Dr. Lawson refused to issue Hensley a DOT card instead writing on Hensley's DOT card application that he did not meet standards "due to diagnosis of narcolepsy." [Doc. 13-1 at 65].

On October 3, 2012, Hensley returned to his family doctor who examined Hensley and who found him eligible to receive a DOT card. [Doc. 13-1 at 70 to 78]. On October 7, 2012, Hensley returned to the sleep study clinic for a Maintenance and Wakefulness Test ("MWT"). Sleep study clinic director Dr. Buechler "determined [Hensley] had a normal MWT and he was easily able to maintain wakefulness without any signs of narcolepsy. His sleepiness is well treated to the point of not being visible on this test." [Doc. 15-4]. Hensley returned to Sisters of Mercy on October 29, 2012, for a re-evaluation. He was again examined by Dr. Lawson who again denied him a DOT card. [Doc. 13-1 at 79 to 85]. At no time did Dr. Lawson contact Dr. Buechler.

Hensley, acting pro se, contacted the EEOC. On October 24, 2012, Hensley completed and submitted an "Equal Employment Opportunity Commission Intake Questionnaire." [Doc. 15-12 at 19 to 24]. At some point after October 24, 2012, Hensley was contacted by an investigator employed by the EEOC. [Doc. 15-12 at 2]. Hensley and the EEOC investigator discussed in detail the events surrounding his denial of a DOT card by Dr. Lawson and what he believed to be UPS's dishonesty and discrimination against him. [Id.]. On December 5, 2012, the EEOC mailed to Hensley a "Dismissal and Notice of Rights" letter. [Doc. 15-12 at 17 to 18]. This letter informed Hensley that his EEOC charge was dismissed and that he had 90 days from his receipt of such letter to file a lawsuit in state or federal court based on his discrimination charge. [Id.].

Hensley filed suit in North Carolina state court on March 6, 2013, alleging two claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008, Pub.L.No. 110-325, 122 Stat. 3553 (Sept. 25, 2008) (herein the "ADA"). [Doc. 1-2]. As to Hensley's Complaint, he asserts first that he was a "qualified individual" within the meaning of the ADA and he was "regarded as" a person with a disability by UPS who discriminated against him on the

basis of this perceived disability. [Doc. 1-2 at ¶¶ 27 to 31]. Hensley acknowledges in his Complaint:

> 5. Plaintiff is aware of the provisions of 49 C.F.R. § 391.47 entitled, "Resolution of conflicts of medical examinations," and is attempting to utilize these administrative procedures; however, due to the 90 day limitation in the United States Equal Employment Opportunity Commission's Notice of Suit Rights, plaintiff is required to file this action prior to the exhaustion of those administrative procedures.

[Id. at 4, ¶5].

Second, Hensley alleges in the alternative that he was a person with a disability who UPS did not reasonably accommodate. [Doc. 1-2 at ¶¶ 32 to 34]. Following the discovery period, the parties voluntarily dismissed Hensley's "disabled" alternative claim by stipulation and Hensley is proceeding solely on his "regarded as" claim. [Doc. 11]. UPS removed Hensley's action to this Court and filed its Answer April 17, 2013. [Doc. 3]. On December 16, 2013, UPS filed its Motion for Summary Judgment [Doc.12], and accompanying Memorandum of Law. [Doc. 12-1]. On January 9, 2014, Hensley filed his Memorandum of Law in Opposition to USP's summary judgment motion. [Doc. 15]. UPS filed it Reply on January 24, 2014. [Doc. 17].

## **DISCUSSION**

The ADA prohibits discrimination against a qualified individual on the basis of disability. 42 U.S.C. § 12112(a). To establish disability discrimination, Hensley must demonstrate that: (1) he had a disability as defined in the ADA; (2) he was a "qualified individual," which entails being able to perform the essential functions of his job; and (3) UPS took an adverse action against him on account of his disability. Young v. United Parcel Service, Inc., 707 F.3d 437, 443 (4th Cir. 2013). The ADA provides three bases for establishing the first element (the existence of a disability): "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(1); Young, 707 F.3d at 443. Hensley seeks relief under this third alternative. His "regarded as" claim under the ADA "includes the circumstance when the employer 'mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." Young, 707 F.3d at 443 (citations omitted). The employer "must believe ... that [an individual] has a substantially limiting impairment when, in fact, the impairment is not so limiting." Id. at 444 (citations omitted). Where an employee relies on a

"regarded as" disabled theory, the Court must focus "on the reactions and perceptions of the employer's decisionmakers." Id.

Congress has given the Secretary of Transportation the power to prescribe the qualifications for drivers of commercial motor carriers. 49 U.S.C. § 31102(b)(1). Myers v. J.B. Hunt Transport, Inc., No. 1:05-cv-717, 2006 WL 3479001 (M.D.N.C. 2006). Therefore, the question of whether Hensley's physical condition allows him to drive delivery trucks for UPS falls within the province of the DOT. The DOT, through the Federal Motor Carrier Safety Administration, has promulgated the "Federal Motor Carrier Safety Regulations," which establish the "minimum qualifications for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers[.]" 49 C.F.R. § 391.1; Myers, slip op. at 3. Under these regulations, a "medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely" in order to obtain a DOT card. 49 C.F.R. § 391.43(f).

The DOT regulations also provide a procedure by which an employee may challenge the denial of a DOT card by the employer's medical provider. The employee may appeal disputes between the employer's

medical provider and a medical provider selected by the employee to the DOT Director of the Office of Motor Carrier Research and Standards. 49 C.F.R. § 391.47. As one component of its summary judgment motion, UPS asserts that it is entitled to judgment as a matter of law because, aside from the merits of Hensley's "regarded as" claim, his Complaint should be dismissed based upon his failure to exhaust his administrative remedies through DOT. In particular, UPS argues:

> The problem for Plaintiff is that an ADA lawsuit is not the proper forum to resolve a dispute about whether someone with narcolepsy with cataplexy should be DOT qualified. Rather, the DOT has its own internal administrative review mechanism for resolving physician disagreement about a driver's qualification to hold a DOT Card. See 49 C.F.R. § 391.47[.]

[Doc. 12-1 at 16]. In support of its position, UPS cites to three cases it contends require the dismissal of this matter, Myers, slip op. at 4; Harris v. P.A.M. Transport, Inc., 339 F.3d 635, 638 (8th Cir. 2003); and Wilkie v. The Golub Corp., No. 1:11-cv-3086, 2013 WL 5354531, slip op. at 4-5 (N.D.N.Y. Sept. 24, 2013). [Id. at 17; Doc. 17 at 6]. Hensley acknowledges in his Complaint:

> 5. Plaintiff is aware of the provisions of 49 C.F.R. § 391.47 entitled, "Resolution of conflicts of medical examinations," and is attempting to utilize these administrative procedures; however, due to the 90 day limitation in the United States Equal Employment Opportunity Commission's Notice of Suit Rights,

9

> plaintiff is required to file this action prior to the exhaustion of those administrative procedures.

[Id. at 4, ¶5].

At the hearing convened by the Court on February 28, 2014, Hensley contended that, initially, he believed he faced a Hobson's choice upon his receipt of the EEOC's "Dismissal and Notice of Rights" letter: He either could have filed this action within the ninety day limitations period but before obtaining an administrative appeal decision about the conflicting medical examinations, or he could have pursued his administrative appeal to finality and foregone his right to sue. Hensley, however, faced no such choice, as demonstrated by the fact that he pursued both.

As a part of the DOT appeal process regarding disputed medical evaluations, 49 C.F.R. § 391.47(b)(3) requires the parties to agree upon a neutral physician to evaluate Hensley before submitting the matter for appeal. During the February 28, 2014, hearing, Hensley explained that UPS had failed to agree to the selection of such a neutral physician. Because Hensley is a union member at UPS, his collective bargaining agreement requires him to arbitrate disputes with UPS. The arbitration as to the appointment of the neutral physician remains pending. Only upon the completion of that proceeding can the DOT administrative proceeding

be concluded. At the hearing both parties agreed that, depending upon the result of Hensley's administrative appeal, this civil matter may become moot.

None of the cases cited by UPS supports its position that this matter must be dismissed due to Hensley's alleged failure to exhaust his administrative remedy. <u>Myers</u>, <u>Harris</u>, and <u>Wilkie</u> all are inapposite because the plaintiffs therein never *attempted* to invoke the DOT administrative appeal procedure to resolve objectionable medical evaluations before filing suit. <u>Myers,</u> slip op. at 4; <u>Harris</u>, 339 F.3d at 638; and, <u>Wilkie</u>, slip op. at 3. In the present matter, Hensley has begun the administrative appeal effort. The administrative appeal process, however, did not conclude before Hensley's right to sue time period expired. In fact, Hensley's administrative appeal has not concluded at this this time. Given that the "DOT is charged with and is much better equipped to handle resolution of disputes over a driver's medical qualifications and can do so far more expertly and efficiently than a reviewing court[,] <u>Harris</u>, 339 F.3d at 638, the Court concludes that the DOT should be permitted to do so here. In order to do so this civil action must be stayed. Likewise, the other issues raised by the Motion for Summary Judgment are not ripe for determination,

and thus the balance of the Motion will be denied without prejudice to renewal after the conclusion of the administrative appeal.

**ORDER**

**IT IS, THEREFORE, ORDERED** that this matter is stayed pending the resolution of Plaintiff's administrative appeal with the Department of Transportation. Within ten days after the conclusion of Plaintiff's DOT administrative appeal, Plaintiff shall file a notice with the Court detailing the results thereof.

**IT IS FURTHER ORDERED** that except as heretofore addressed in part, the Defendant's Motion for Summary Judgment [Doc. 12] is **DENIED** without prejudice.

The Clerk is directed to administratively close this file pending resolution of the administrative proceeding.

**IT IS SO ORDERED**.

Signed: March 7, 2014

Martin Reidinger
United States District Judge